IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ARISTEDE JOHNSON | NO. 96-CR-176 |

# RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America asks the Court to deny the defendant's compassionate-release motion, which is based on COVID-19 concerns, for the reasons that follow.

**1.     Factual Background**

On July 18 and August 26, 1996, Aristede Johnson and two codefendants robbed two credit unions. Johnson's codefendant Pedro Sanchez carried and pointed a gun during the robberies while Johnson stole money from the credit union employees and customers. No shots were fired. The third codefendant obtained the vehicles used during the robberies. The other two conspirators pled guilty and only Johnson proceeded to trial. On January 28, 1997, a jury convicted Johnson on one count of conspiracy to rob a federally insured credit union, two counts of aiding and abetting armed robbery of a federally insured credit union, two counts of aiding and abetting the use/carry of a firearm during a crime of violence. The district court sentenced Johnson to a total of 370 months' incarceration (stacking the two 924c

convictions resulting in a sentence of 25 years for those two counts).

**Argument and Authorities**

While the defendant has a relatively exemplary prison record and has served a large portion of his sentence for two violent acts – the armed robberies of two credit unions – his motion fails on the merits, for the following three reasons.

### 1. COVID-related concerns alone do not constitute extraordinary and compelling reasons for relief

The defendant's COVID-related concerns do not constitute extraordinary and compelling reasons under the compassionate-release statute. Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement, USSG § 1B1.13, provides no basis for a sentence reduction based on COVID-19. Rather, the policy statement allows a reduction for "extraordinary and compelling reasons" only if the reasons are "consistent with this policy statement." USSG §§ 1B1.13(1)(A) & (3). Application note 1 to the policy statement then explains that "extraordinary and compelling reasons exist under any of the circumstances set forth below," which include only (a) a defendant suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (b) a defendant who is at least 65 years old and "is experiencing a serious

deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" (c) a defendant who has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." USSG § 1B1.13, comment. (n.1).

The defendant does not present any extraordinary or compelling reasons to support his release. The defendant, who is 50 years of age, suffered exposure to tuberculosis in the past but he received treatment for it and recovered from it. This disease does not meet the standard of a condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." He claims that he is in a facility with a high incidence of COVID-19 but refused to be tested for it. In any event, prison staff acted out of an abundance of caution and quarantined him to keep him safe. There is no indication in any medical record or from the defendant that his isolation failed to protect him.

The defendant has been incarcerated for over 24 years and has a remarkably clean record while incarcerated. He was sentenced to 370 months and has a projected release date in December 2023. Other than a report for "unsanitary"

conditions, the defendant has no incident reports and has apparently adjusted well to prison life. The defendant claims that if he is released early, he will be under the supervision of his brother, a veteran in the Houston Fire Department.

With regard to the last consideration relating to extraordinary and compelling reasons, BOP has issued a regulation defining its own consideration of compassionate-release requests. *See* BOP Program Statement 5050.50, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.[1]

Neither the policy statement nor the BOP regulation provides any basis for compassionate release based on general COVID-19 concerns. Rather, the grounds for compassionate release the Commission identified are all based on inherently individual circumstances—health, age, and family responsibilities—and nothing remotely comparable to the general COVID-19 concerns that thousands of offenders

---

[1] The defendant might argue that the policy statement is only advisory, but that is incorrect. The policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. *See Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in Section 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

could cite in compassionate-release motions. On this basis, at least one district court has already denied a defendant's compassionate-release motion. *See United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("As defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). Similarly, Mr. Johnson does not assert that he is suffering from any medical conditions that place him in a particularly vulnerable class nor has the BOP found a compelling reason to justify his request.

### 2. Defendant has not shown that BOP is incapable of managing the COVID-19 pandemic so that release is warranted

Even if COVID-19 concerns were to qualify as extraordinary and compelling circumstances under the policy statement, the defendant has not shown that the BOP is incapable of managing the situation such that release is warranted. The BOP is monitoring the situation on a daily—even hourly—basis, and it has taken aggressive action to mitigate any health risks for prisoners.[2] Indeed, Mr. Johnson's situation clearly shows that BOP has taken aggressive steps to mitigate any COVID-19 outbreaks. When BOP realized the Federal Medical Center in Fort Worth had an

---

[2] The following information comes from https://www.bop.gov/resources/news/20200313_covid-19.jsp and https://www.bop.gov/coronavirus/index.jsp.

**Response to Compassionate-Release Motion – Page 5**

outbreak, BOP attempted to test the defendant. When he refused to be tested, BOP took the steps to quarantine Mr. Johnson for two weeks for his own protection and to protect others in the event he had been exposed to the virus.

BOP has been planning for potential COVID-19 transmissions since January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization. Since then, BOP has modified its operations and implemented a multi-phase action plan to minimize the risk of COVID-19 transmission into and inside its facilities. Information about the action plan and BOP's response to COVID-19 is updated daily at BOP's website—

- **COVID-19 Resource Page:**
  https://www.bop.gov/coronavirus/

- **COVID-19 Action Plan:**
  https://www.bop.gov/resources/news/20200313_covid-19.jsp

- **BOP Modified Operations:**
  https://www.bop.gov/coronavirus/covid19_status.jsp

- **COVID-19 Action Plan Phase Seven:**
  https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp

On May 18, 2020, the Director of the Bureau of Prisons (BOP) ordered the implementation of Phase 7 of its COVID-19 Action Plan. This phase extends all measures from Phase 6, to include measures to contain movement and decrease the spread of the virus. The Phase 7 Action Plan will remain in place through June 30,

2020, at which time the plan will be evaluated. At the end of that period, the decision will be reevaluated to determine whether to continue the Phase 7 measures, which include:

- Screening of Inmates and Staff: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with exposure risk factors are quarantined; symptomatic inmates with exposure risk factors are isolated and tested for COVID-19 pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. Moreover, BOP staff registering a temperature of 100.4 degrees (or higher) will be barred from the facility on that basis alone.

- Quarantine Logistics: The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with COVID-19 under the screening protocol outlined above.

- Suspension of Social Visits and Tours: Social visits have been suspended. To ensure that familial relationships are maintained, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities have also been suspended for at least the next 30 days.

- Suspension of Legal Visits: BOP also has placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection under the screening protocol outlined above.

- Suspension of Inmate Movements: Inmate movement is suspended with limited exceptions, including transfers related to forensic studies, writs, Interstate Agreements on Detainers (IAD), medical or mental health reasons (including local medical trips), and Residential Reentry Center placements. To be approved for travel under one of the exceptions, inmates must have been in BOP custody for more than 14 days. They

> must also undergo an exit screening for COVID-19 symptoms (fever, cough, shortness of breath and temperature). ◦If the inmate has no symptoms and a temperature less than 100.4 degrees F, the inmate will be transferred. If the inmate has COVID-19 symptoms, or temperature greater than 100.4 degrees F, they will not be transferred and will instead be immediately placed in isolation. All inmate movement under these exceptions is to be tracked and monitored.

- Modified Operations: Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Moreover, per the Attorney General's instruction, the BOP is also prioritizing the use of BOP's various statutory authorities (such as 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g)) to grant home confinement in appropriate circumstances for inmates seeking transfer in connection with COVID-19.[3] Per this procedure, if the defendant is statutorily eligible for home confinement and meets certain other criteria, before the BOP grants discretionary release, a BOP Medical Director will "make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the

---

[3] This information comes from the publicly available memorandum from the Attorney General to the BOP Director, available at https://www.justice.gov/file/1262731/download.

**Response to Compassionate-Release Motion – Page 8**

location at which the inmate seeks home confinement."

Given all of the above, judicial action is unnecessary—and, in fact, it would be detrimental to this process as it would inevitably result in scattershot treatment of inmates in contravention to the BOP's organized, comprehensive approach of granting home confinement under consistent criteria to eligible inmates in its custody. As just outlined, the BOP is also employing practices to keep the prison population at low risk for COVID-19 spread. Accordingly, the government opposes judicial action in individual cases such as this.

The Fifth Circuit has already denied prisoners' motions for bail pending appeal that rested on COVID-19 concerns. *See United States v. Anderson*, Fifth Cir. No. 19-10963 (3/19/20 & 3/23/20 orders). District courts in other districts have also denied similar motions. *See, e.g.*, *United States v. Gileno*, No. 3:19-cr-161, 2020 WL 1307108 (D. Conn. Mar. 19, 2020); *United States v. Cohen*, No. 18-cr-602, 2020 WL 1428778 (S.D.N.Y. Mar. 24, 2020). As the *Gileno* court reasoned:

> With regard to the COVID-19 pandemic, Mr. Gileno has . . . not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno. The Court takes judicial notice of the fact that public health recommendations are rapidly changing. But at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated.

*Gileno*, 2020 WL 1307108, at *4 (citation omitted). In sum, this Court should

recognize what other courts have held that § 3582 contemplates the compassionate release for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully-imposed sentences to deal with a world-wide viral pandemic.

### 3. Defendant fails to demonstrate he qualifies for compassionate release pursuant to § 3582 and § 1B1.13.

As a matter of law and policy, the defendant fails to qualify for compassionate release because he is not subject to a terminal or serious illness as defined by § 3582, his age does not place him in a high-risk category, and his alleged increased risk of contracting COVID-19 because of past tuberculosis exists whether or not he is incarcerated. *See, e.g., United States v. Clark*, 2020 WL 1557397 (M.D.LA. Apr. 1, 2020) (denying compassionate release because of COVID-19 to prisoner over 60). Nevertheless, he argues that his medical condition when combined with the COVID-19 pandemic present "extraordinary and compelling reasons" to justify his immediate release.

The defendant raises no claim that he is terminally or seriously ill, nor is he "experiencing a serious deterioration in physical or mental health because of the aging process." USSG § 1B1.13. The defendant is a 50-year-old male with past exposure to tuberculosis. Nothing described in the defendant's motion rises to the level of "an extraordinary and compelling reason" as defined by § 1B1.13 because his claims do not "substantially diminish [] [his] ability to provide self-care within

**Response to Compassionate-Release Motion – Page 10**

the environment of a correctional facility and from which…he is not expected to recover," nor do his claims demonstrate "a serious deterioration in physical or mental health because of the aging process." USSG § 1B1.13. *See United States v. Lee*, 2020 WL 3051055 (E.D. Tx. June 5, 2020) (denying a similar COVID-19 request as the defendant was not suffering from a serious medical condition).

## Conclusion

For the above reasons, this Court should deny the defendant's motion.

    Respectfully submitted,

    RYAN K. PATRICK
    UNITED STATES ATTORNEY


    s/s Steven D. Mellin
    Steven D. Mellin
    Assistant United States Attorney
    1000 Louisiana, Suite 2300
    Houston, Texas
    Tel: 713-567-9390
    Cell: 713-410-6349
    Email:steven.mellin@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I also emailed a copy to the Defendant's attorney, Philip Gallagher at the Federal Public Defender Service.

    _s/s Steven D. Mellin_____
Steven D. Mellin
Assistant United States Attorney